**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CARL AND SALENA ACCARDO, | § | |
| Individually and A/N/F of D.A., A MINOR | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0008 |
| | § | |
| AMERICA FIRST LLOYDS INSURANCE | § | |
| COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

**I.      Background**

         The remaining issue in this uninsured motorist case is the extracontractual bad-faith claim.

That claim was abated until the conclusion of the trial that resolved the third-party uninsured

motorist's tort liability and the extent of the plaintiffs' resulting damages.  The issue now presented

is whether the insurer, America First Lloyds Insurance Company ("America First"), is entitled to

summary dismissal of the bad-faith claim.

         The plaintiffs are the insureds, Carl and Salena Accardo, suing on their own behalf and as

next friend to their minor son.  The Accardos and their son were injured in May 2008 when their car

collided with a vehicle that an unknown, uninsured driver had abandoned on the highway late at

night.  The Accardos' Texas Personal Automobile Insurance Policy, which America First Lloyds

issued, included uninsured/underinsured motorist ("UM/UIM") coverage.  The UM/UIM coverage

limited benefits for bodily injury to $250,000 a person or $500,000 per accident.  In November

2010, the Accardos sued America First in Texas state court alleging a wrongful refusal to pay

UM/UIM benefits.  America First removed to this court on the basis of diversity jurisdiction.  In a Memorandum and Opinion issued at Docket Entry No. 46, this court agreed that the extracontractual claim for breach of the duty of good faith and fair dealing in investigating and settling the UM/UIM claim would not be litigated until after the uninsured motorist's negligence and the extent of the Accardos' resulting damages were determined.  The court denied America First's motion for summary dismissal of the extracontractual claim.  *See Accardo v. Am. First Lloyds Ins. Co.*, No. H-11-0008 (LHR), 2012 WL 1576022 (May 3, 2012).  After a two-day jury trial on third-party fault and the Accardos' damages, the jury returned a verdict that the third-party motorist was wholly at fault and that the Accardos were entitled to certain damage elements and amounts.  America First promptly agreed to pay the amounts awarded.  The court has entered partial final judgment.

America First has again moved for summary judgment on the bad-faith claim.  The Accardos have responded, and America First has replied.  (Docket Entries Nos. 64, 73, 74, and 75).  Based on the pleadings; the motion, response, and replies; the parties' submissions; the record; and the applicable law, and for the reasons that follow, the court grants America First's motion for summary judgment on the extracontractual claims.  The court instructs the parties to confer and to file, no later than September 20, 2013, a written statement identifying any further issues and proposing a form of final judgment.

## II.    The Applicable Legal Standards

Under Texas law, an insurer providing UM/UIM coverage must

> provide for payment to the insured of all amounts that the insured is *legally entitled to recover* as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

TEX. INS. CODE ANN. § 1952.106 (emphasis added).  Proving legal entitlement to recover from a

UM/UIM motorist is a condition precedent to the insurer's contract obligation.  An insured must

establish the legal entitlement "'before there is a right to immediate performance and before there

is a breach of contractual duty.'"  *See Henson v. Tex. Farm Bureau Mut. Ins. Co.*, 989 S.W.2d 837

(Tex. App. —Amarillo 1999) (quoting *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537

S.W.2d 1, 3 (Tex 1976)), *aff'd,* 17 S.W.3d 652 (Tex. 2000).

Because legal entitlement hinges on proving third-party tort liability, "the UIM insurer is

under no contractual duty to pay benefits until the insured obtains a judgment establishing the

liability and underinsured status of the other motorist."  *Brainard v. Trinity Univ. Ins. Co.*, 216

S.W.3d 809, 818 (Tex. 2006).  "Neither requesting UIM benefits nor filing suit against the insurer

triggers a contractual duty to pay."  *Id.*  While "the insured is not required to obtain a judgment

against" the third-party tortfeasor, not even "an admission of liability from a tortfeasor establishes

UIM coverage, because a jury could find that the other motorist was not at fault or award damages

that do not exceed the tortfeasor's liability insurance."  *Id.* (citing *Henson*, 17 S.W.3d at 654).

"Thus, a UIM contract is unlike many first-party insurance contracts because, according to its terms,

benefits are conditioned upon the insured's legal entitlement to receive damages from a third party."

*In re Am. Nat'l Cnty. Mut. Ins. Co.*, 384 S.W.3d 429, 437 (Tex. App. —Austin 2012, orig. proc.).

That is, "the insurer's contractual obligation to pay benefits does not arise until liability and damages

are determined."  *Brainard*, 216 S.W.3d at 818.

A case raising similar issues recently provided the court an opportunity to outline the current

state of Texas law on bad-faith claims in the UM/UIM context.  *See Terry v. Safeco Ins. Co. of Am.*,

— F. Supp. 2d —, 2013 WL 873654, at *7–*9 (S.D. Tex. Mar. 7, 2013).  Insurers have "a common

law duty to deal fairly and in good faith with its insured in the processing and payment of claims." *Aleman Zenith Ins. Co.*, 343 S.W.3d 817, 822 (Tex. App. —El Paso 2011, no pet.) (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995)). "The duty arises from the special relationship that is created by the contract between the insurer and the insured." *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 389 (Tex. App. —Houston [1st Dist.] 2011) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)). "A claim for breach of the duty of good faith and fair dealing is separate from any claim for breach of the underlying insurance contract . . . . To prevail, the insured must prove that the insurer had no *reasonable basis* for the denial or delay in payment of a claim and that the insurer knew or should have known of that fact." *Id.* (citations omitted). "An insurer may demonstrate its entitlement to summary judgment on this type of claim by demonstrating that there is a good faith dispute as to coverage." *Id.* (quotation omitted).

"An insurer will be liable if [it] denies a claim when the insurer knew or should have known that it was reasonably clear that the claim was covered." *Aleman,* 343 S.W.3d at 822 . "An insurer may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." *Id.* "The issue of the breach of the duty of good faith and fair dealing focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in handling the claim." *Id.* (quotation omitted). "An objective standard is utilized to determine whether a reasonable insurer under similar circumstances would have delayed or denied payment of the claim." *Id.*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, *Inc. v. Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  When the moving party has met its Rule 56 burden, the nonmoving party must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir.  2007).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### A.     Whether *Brainard* Insulates Insurers from Prejudgment Bad-Faith Claims

America First argues that it is entitled to summary judgment on the Accardos' bad-faith claim because under Texas law, a court could not conclude that liability was reasonably clear until the Accardos received a favorable judgment on the underlying third-party tort claim and America First became contractually obligated to pay UM/UIM benefits.  After *Brainard v. Trinity Universal Insurance Company*, 216 S.W.3d 809, 818 (Tex. 2006), America First argues, bad-faith claims in the UM/UIM context should fail as a matter of law unless the plaintiff can point to its insurer's bad-faith act unconnected to postponing payment until the underlying tort claim is resolved.  An example of such an act might be misrepresenting the insured's policy benefits.

5

This court rejected a similar argument in America First's first motion for summary judgment. The court declines America First's renewed invitation to read Texas law so broadly as to preclude a bad-faith claim in virtually every uninsured-motorist case.  (Docket Entry No. 73 at 10).[1]

The Fifth Circuit has held that "Texas courts construe the phrase 'legally entitled to recover' in UIM provisions to mean that the insured must establish the uninsured motorist's fault and the extent of the resulting damages before becoming entitled to recover UIM benefits."  *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880 (5th Cir. 2004) (quotation and alteration omitted). That statement was not groundbreaking.  Four years before *Hamburger*, the Texas Supreme Court recognized that established third-party tort liability was a condition precedent to the obligation to pay UIM claims.  *See Henson*, 17 S.W.3d at 653.  At the same time, the Fifth Circuit noted that "no Texas cases . . . have squarely held that liability can never be reasonably clear before there is a court determination of proximately caused damages" and declined to adopt that interpretation "[a]bsent a more clear indication from Texas courts that liability cannot be reasonably clear . . . until the insured is found in a legal proceeding to be entitled to recover."  *Hamburger*, 361 F.3d at 880.  As this court noted in the earlier summary-judgment opinion in this case, under Texas law, "[w]hen a reasonable investigation reveals overwhelming evidence of the UM/UIM's fault, the judicial determination that triggers the insurer's obligation to pay is no more than a mere formality." *Accardo*, 2012 WL 1576022, at *5.

In its first round of summary-judgment briefing, America First argued that *Brainard* was the

---

[1]

The Fifth Circuit has "acknowledge[d] that a new decision clarifying the applicable substantive law may justify reexamining a denial of summary judgment."  *Lavespere v.  Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by*, *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).

clear indication the Fifth Circuit had been waiting for.  In *Brainard*, the court rearticulated what *Henson* had held, stating that UM/UIM benefits do "not arise until the uninsured motorist's liability, and the insured's damages, are legally determined."  216 S.W.3d at 818.  This restatement of *Henson*'s holding did not change how Texas courts and the Fifth Circuit require trial courts to consider bad-faith claims in the uninsured-motorist context.  *Brainard*'s restatement of the law teed up the holding on the issue in that case, which was unrelated to whether and when a bad-faith claim is viable.  Instead, *Brainard* applied *Henson* to the statutory provisions on recovering attorney's fees.  *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 38.002).  In the earlier summary-judgment ruling, this court concluded that *"Brainard* does not address or call into doubt *Hamburger*'s holding." *Accardo*, 2012 WL 1576022, at *5.

America First points to a recent UM/UIM case from the Austin Court of Appeals, *In re Am. Nat'l Cnty. Mut. Ins. Co.*, 384 S.W.3d at 437, to support its current summary-judgment motion.  In *American National*, the appellate court reversed the trial court's decision not to abate extracontractual bad-faith claims in a UM/UIM case.  The court noted that a decision in favor of American National on the breach of contract claims could moot the extracontractual claims and make pretrial litigation costs relating to those claims unnecessary.  The holding is consistent with this court's approach in abating the bad-faith claim in this case.  America First emphasizes the statements in the *American National* opinion that "[a]n insurer obviously has no obligation to settle a claim that it is not contractually obligated to pay," "a UIM insurer generally cannot be liable for insurance code violations related to delays in payment, such as delays in making a timely offer, on claims that it has no duty to pay," and an "an insurer generally cannot be liable on bad faith claims arising from its denial or failure to investigate claims it has no duty to pay."  *Id.* at 439.  But these

statements are not inconsistent with the Fifth Circuit's decision to recognize extracontractual claims in the UM/UIM context.

Placed in context, these statements in the *American National* opinion justify the threshold decision to abate the bad-faith claim until the insured establishes contractual liability and damages. Once a legal proceeding establishes that the insured is entitled to UM/UIM coverage and resolves the damages amounts, the bad-faith claim is ripe for consideration.  Reserving decision on a bad-faith claim does not immunize the insurer from liability for that claim.  To read the statements as broadly as America First argues would effectively eliminate the cause of action, with no indication that such a result was intended.  *See Arnold*, 725 S.W.2d at 167 ("[W]ithout [a bad faith] cause of action insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed.").  Neither the Fifth Circuit nor Texas courts have established a safe harbor from extracontractual claims in this context.  The cases that America First cites do not abrogate the Fifth Circuit's holding in *Hamburger*.[2]

Because there is no categorical preclusion of extracontractual claims, it is necessary to examine the record to decide whether America First is entitled to judgment dismissing the claim now that its obligation to pay the contract claim has been established.  As explained below, based on the

---

[2]

A panel decision can only be overruled in three ways: a subsequent decision of the Supreme Court, by the Fifth Circuit sitting en banc, or, in decisions construing Texas law, subsequent Texas court decisions "clearly contrary" to the Fifth Circuit's prior rulings.  See *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 185 (5th Cir. 1995).  "Once the [Fifth Circuit] has settled on the state law to be applied in a diversity case, the precedent should be followed by other panels without regard to any alleged existing confusion in state law, absent a subsequent state court decision or statutory amendment which makes [the Fifth Circuit's] decision clearly wrong."  *Lee v. Frozen Food Exp., Inc.*, 592 F.2d 271, 271 (5th Cir. 1979).  The Hamburger panel required the insurer to point to a case that "squarely held that liability can never be reasonably clear [under *Universe Life Insurance Company v. Giles*, 950 S.W.2d 48 (Tex. 1997)] before there is a court determination of proximately caused damages."  America First has not pointed to a case that "squarely held" as Hamburger required.

record evidence, America First has demonstrated that there are no material factual disputes and that, as a matter of law, it is entitled to dismissal of the bad-faith claim. Once more, *Hamburger* provides the direction.

### B.    The Bad-Faith Claim

"An insurer does not breach its duty of good faith and fair dealing merely by erroneously denying a claim." *Hamburger*, 361 F.3d at 881 (citing *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997)). "Evidence that only shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Id.* (quotation omitted). "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Gordon v. Allstate Tex. Lloyds*, No. H-04-1061 (LHR), 2006 WL 509838, at *8 (S.D. Tex. Mar. 2, 2006).

In this case, America First argues that it acted in good faith and fairly dealt with the Accardos because it had a reasonable basis to question whether Carl Accardo's own negligence may have contributed to the cause of the collision, whether back surgery for Carl Accardo was needed, and the amounts of the Accardos' damages, particularly for pain and suffering. America First points to the repeated and good-faith efforts it made to settle and argues that submitting the disputes to a jury for resolution was reasonable after those efforts failed. In response, the Accardos claim that America First was unreasonable in asserting any degree of negligence on Carl Accardo's part and in disputing the necessity of his back surgery. The record evidence leads the court to conclude that these were bona fide disputes, particularly over the need for the surgery and the damage amounts.

The record evidence shows that the dispute America First raised as to Carl Accardo's own negligence was not unreasonable. The Accardos ran into a car abandoned in a moving lane of traffic. There was an issue as to whether the driver could have or should have seen the car and realized it was stopped in enough time to avoid hitting it. The Accardos point to the jury's no-fault determination and to deposition testimony in which an America First representative claimed not to have reduced or offset any settlement offers based on the possibility of the Accardos' own negligence. The Accardos argue that this provides evidence of bad faith. But America First's willingness to set aside any question of comparative negligence in its settlement negotiations does not provide a basis to infer bad faith in the decision to submit this issue to a jury when settlement efforts failed. The Accardos have not identified or submitted evidence or relevant law supporting an inference that America First's pursuit of a comparative-fault determination after settlement could not be achieved was unreasonable or in bad faith.

The evidence that the damages disputes were bona fide is stronger. America First points to Salena Accardo's pretrial settlement demand of $50,000.00, which included $10,000 that was previously paid under the personal injury protection provisions of the policy ("PIP"), as well as $22,000.00 in past medical expenses and $4,000.00 in lost wages. The jury found that she had incurred past medical care expenses of $18,397.32 and that America First owed her $3,200.00 for her past pain and anguish, for a total of $21,597.32. (Docket Entry No. 61). When the $10,000 in PIP payments are added to America First's last settlement offer of $13,655.52, the jury's damages verdict was less than what America First had offered and much less than the demand. The evidence supports finding a bona fide dispute.

The PIP payment for the minor was $2,258.00. The jury awarded $2,014.22 for past medical

care expenses, which was lower than the PIP payment, and $30,000.00 for past pain and suffering, which exceeded the $10,000 pretrial settlement demand.  (Docket Entry No. 61).  America First points to these discrepancies as evidence of the difficulty in assessing the subjective damages elements of mental and physical pain.  These factors, together with the PIP payments covering the child's past medical bills, leads the court to conclude that America First's disagreement about the subjective tort damages the Accardos demanded was not in bad faith.  *Hamburger*, 361 F.3d at 882.

The jury found that Carl Accardo was entitled to receive $28,005.78 in past medical expenses; $79,000.00 in future medical expenses (an amount that includes future back surgery); $8,840.00 in past physical pain and mental anguish; no amount for future pain and anguish; and $5,000.00 in future physical impairment.  (Docket Entry No. 61).  America First had offered to settle Carl Accardo's UM/UIM claim for $37,267.21.  With the $10,000 in PIP payments, the settlement offer exceeded the jury's award for past medical expenses of $28,005.78.  Carl Accardo's pretrial settlement demand for past medical expenses and past pain and suffering was $125,000.00, which far exceeded the jury's award.  The jury also awarded Carl Accardo future medical expenses of $79,000 to cover the spinal surgery and $5,000 for future physical impairment, which America First disputed.  America First emphasizes that its disagreement about the need for any future surgery was reasonable.

America First's medical expert testified that the back surgery was unnecessary and inappropriate.  It was unnecessary because Carl Accardo had very little pain, and only when he bent over.  It was inappropriate because the proposed surgery was for nerve compression, and there was no evidence that he had any symptoms indicative of nerve-root compression.  Finally, the record showed that he had not scheduled the surgery at the time of trial and had not included it in his final

11

pretrial settlement demand.

In response, the Accardos challenge the reliability of America First's expert because he did not examine Carl Accardo and had not treated a patient since 1996. While an expert's opinion that a claimed element of damages is without basis is some evidence of a bona fide claim dispute, an insurer's reliance on an expert report does not "automatically foreclose" recovery for bad faith and will not preclude recovery "if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable." *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997). The Accardos have not pointed to any evidence indicating improper preparation of the report or unreasonable reliance on it. Medical experts often provide peer review of a case file without an in-person examination. Medical experts frequently provide such services as insurance-claim review long after they have stopped seeing patients. The Accardos' contention that America First retained the expert to "manufacture" a post-denial basis for its decision, (Docket Entry No. 73 at 5), is both conclusory and speculative. The Accardos have not pointed to evidence suggesting that the dispute about the necessity of the surgery was not bona fide.

The Accardos argue that *Universe Life Insurance Company v. Giles,* 950 S.W.2d 48, 56 (Tex. 1997), supports their arguments that the summary-judgment motion should be denied and that their bad-faith claim should be tried promptly. The Accardos assert that such a trial is proper as soon as "the insurer knew or should have known that it was reasonably clear that the claim was covered." But just as America First overread *Brainard*, so do the Accardos overread *Giles.* In *Giles*, a divided Texas Supreme Court attempted to harmonize the Texas law on no-evidence review of a jury finding, which precludes weighing conflicting evidence, with meaningful appellate review of jury findings on claims for breach of the duty of good faith and fair dealing. The Court held that when

there are genuine disputes about facts material to deciding whether an insurer breached its duty of good faith and fair dealing, a jury, not the court, should decide.  At the same time, however, if there is a bona fide dispute as to the underling tort liability or the resulting damages, and the insured cannot point to facts in the record supporting an inference that the insurer has no reasonable basis to delay payment until those disputes are resolved, summary judgment is appropriate for the insurer. The Texas Supreme Court, the Fifth Circuit, and this court have "recognized that evidence showing only a bona fide coverage dispute does not, standing alone, demonstrate bad faith." *Nicolau*, 951 S.W.2d at 448; *Hamburger*, 361 F.3d at 881; *Gordon*, 2006 WL 509838, at *8.  And as *Giles* recognized, the appropriate standard for finding bad faith is that the insurer denies or delays paying a claim after it was or should have been reasonably clear to the insurer that the claim was covered and in what amount.  950 S.W.2d at 49.

Once the insurer has met its burden of showing undisputed evidence that supports finding a reasonable basis to delay payment because there was a bona fide dispute as to the uninsured motorist's fault or the extent of the insured's damages, the insured must point to factual evidence that calls into doubt the bona fides of the dispute and the reasonableness of the insurer's actions. America First has identified competent record evidence showing its reasonable basis for delaying payment of the Accardos' payment demands because of bona fide and reasonable disagreements about the extent of the injuries and resulting damages.   The Accardos have failed to identify record evidence supporting an inference that the disputes over coverage and damages — particularly over the amounts for pain and suffering and whether Carl Accardo's claim properly included future back surgery — were unreasonable or not bona fide.  The evidence shows that as a matter of law, America First did not breach its duty of good faith and fair dealing to the Accardos when it delayed paying

13

until the third-party motorist's tort liability and the extent of the insureds' damages had been established.  Summary judgment is granted dismissing the bad-faith claim.

**III.**     **Conclusion**

For the foregoing reasons, the court grants America First's motion for partial summary judgment on the extracontractual claims.  Partial final judgment has already been granted.  The parties are instructed to confer and to file a written statement identifying any further issues and proposing a form of final judgment no later than September 20, 2013.

SIGNED on September 10, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

14